## JULBE *v.* GUZMÁN.

### APPEAL from the District Court of Humacao.

#### No. 445.—Decided June 15; 1910.

VIDUAL USUFRUCTUARY PORTION IN AN INTESTATE SUCCESSION—FORMER LAWS.—
   Befoie 1888, when the Spanish Civil Code went into effect, law 7, Title III,
   *Partida* 6, of the *Siete Partidas,* provided that a widow should receive a
   fourth part of the estate, not to exceed a certain amount, and it also pro-
   vided that she should receive nothing at all if she had enough of her own
   upon which she could live honestly.

ID.—LAWS IN FORCE IN PORTO RICO UNTIL 1902.—The Spanish Civil Code, which
   was in force in Porto Rico until 1902, made a difference between testate suc-
   cession and intestate succession, laying down the rules which should govern
   each of them. That Code said nothing about the rights of the widower when
   there were offspring or ancestors of the decedent.

ID.—JURISPRUDENCE OF THE SUPREME COURT OF SPAIN.—The Supreme Court of
   Spain has never passed upon this question with reference to the rights of
   the widower in the intestate succession, concurrently with descendants or as-
   cendants.

ID.—LAWS IN FORCE IN PORTO RICO FROM 1902 TO 1905.—From 1902, when the
   Civil Code of Porto Rico was passed, the Spanish Civil Code being thereby
   repealed, to March 9, 1905, when the act referring to forced heirs was ap-
   proved, section 821 of aforesaid Code was in force, and although placed in
   the part of the Code relating to testate successions, it fixes the rights of the
   widower with respect to the intestate succession. By virtue of the aforesaid
   Act of March 9, 1905, the provisions of the Spanish Code, which relate to tes-
   tate successions, were reenacted.

ID.—EFFECT OF THE ACT OF MARCH 9, 1905.—The provisions of the Spanish Civil Code relating to testate successions having been reenacted by the aforesaid act, which makes no reference to intestate successions, the question again arises as to the rights of the widower who is now placed in a worse position than he was before, because section 953 of the Spanish Civil Code which recognized the rights of the widower along with those of brothers or nephews, was repealed by the present Code and was not restored by the Act of March 9, 1905.

ID.—ACT OF MARCH 9, 1905—CASUS OMISSUS.—We are thus driven to the conclusion, whether it happened by an oversight or otherwise, that the legislature, in fixing the rights of the widower, did not prefer him to, or consider him along with, parents, children, brothers or nephews, but limited itself to defining in section 920 that ''in default of brothers and nephews or their children, whether of whole or half blood, the surviving spouse shall succeed to all the property of the decedent.''

LANGUAGE OF THE LAW.—The words used in the law are unmistakable, and however inconsistent they may seem, it is not for the court to substitute its will for that of the Legislature, bearing in mind that the Legislature had the power to determine who should be the forced heirs and who should succeed in the case of intestacy.

The facts are stated in the opinion.

*Messrs. Manuel Tous Soto and Juan Vías Ochoteco* for appellant.

*Mr. Eugenio Benítez Castaño* for respondents.

MR. JUSTICE WOLF delivered the opinion of the court.

On October 30, 1906, Doña Victoria López Julbe died intestate at Humacao. On December 3, 1908, Doña Dolores Julbe the mother of the decedent prayed of the District Court of Humacao that she be declared the sole universal heiress of her daughter. On August 7, 1909, the respondent, Julio D. Guzmán Toro, asked to intervene in the suit and that he be declared heir of his wife of his portion in usufruct which, as widower, was apportioned to him by the Law of March 9, 1905. The district court, after a hearing, declared Dolores Julbe in the capacity as mother and Julio D. Guzmán in his capacity as widower surviving, as intestate heirs of the decedent. The ground of this appeal is that no provision is made for the widower in advance of the rights of the ascendants of a person deceased.

Before 1888, when the Spanish Civil Code went into effect, the law in matters of intestate succession recognized certain rights in favor of the widow. The law was silent with respect to the widower. The *Siete Partidas*, law 7—Title III, *Partida* 6—provided that a widow should receive a fourth part of the estate, not to exceed a certain amount and also provided that she should receive nothing at all if she had enough of her own upon which she could live honestly. This appears to have been all the law on the subject of the rights of either the husband or wife surviving until 1888. (See the judgment of the Supreme Court of Spain of October 20, 1860.)

The Spanish Civil Code which was in force in Porto Rico until 1902, made a difference between testate succession and intestate succession laying down the principles which should regulate each of them.

The pertinent provisions of the Spanish Civil Code applicable to the case of the widower are as follows:

(War Department Translation.)

Intestate succession:

"Art. 807.—Heirs by force of law are:

"1. Legitimate children and descendants, with regard to their legitimate parents and ascendants.

"2. In the absence of the foregoing, the legitimate parents and ascendants, with regard to their legitimate children and descendants.

"3. The widower or widow, the natural children legally acknowledged, and the father or the mother of the latter, in the manner and extent established in articles 834, 835, 836, 837, 840, 841, 842 and 846.

"Art. 834.—The widower or widow, who on the death of his or her spouse, is not divorced, or should be so by default of the deceased spouse, shall have a right to a portion in usufruct equal to that corresponding by way of legal portion to each of the legitimate children or descendants who have not received any betterment.

"If one legitimate child or descendant only survives, the widower or widow shall have the usufruct of the third destined to the better-

ment, the former preserving the direct ownership until, on the death of the surviving spouse, the title is merged in him.

"Art. 836.—Should the testator not leave any descendants, but only ascendants, the surviving spouse shall have a right to the third of the estate in usufruct.

"Art. 837.—If the testator should leave neither legitimate ascendants nor descendants, the surviving spouse shall be entitled to one-half of the estate also in usufruct."

In intestate succession:

"Art. 953.—Should there be brothers or sisters or children of brothers or sisters, the surviving widow or widower shall have a right to receive the part of the inheritance in usufruct assigned him or her in article 837.

"Art. 982.—In order that a testamentary succession in the right of accretion may take place it is necessary:

"1. That two or more persons are designated to the same inheritance or to the same portion thereof without a special designation of shares.

"2. That one of the persons designated dies before the testator or renounces the inheritance or is disqualified to receive it."

As may be seen the Code said nothing about the rights of the widower when there were offspring or ancestors of the decedent. This fact has been made the subject of comment by all commentators, Alcubilla, Valverde, Manresa and Martínez Ruiz being in favor of the idea that the widower is entitled to the same usufruct whether the succession is testate or intestate and Morell and Scaevola being against such idea. The arguments in favor of the same rights in either case are based on the fact that the widower is a forced heir except when he is separated from his wife on account of divorce; that he cannot be disinherited without just cause; that it is unnecessary to refer to his rightful share in intestate succession because having only a right to the usufruct it is only logically necessary to name those who are entitled to succeed

to the property; that the intention of the legislature was clear to recognize such right as may be seen from the inspection of the proposed Civil Code submitted to the Cortes (*ley de bases*) and that the failure to mention him in connection with descendents and ascendants, if such connection should be made up by applying the rules of testate succession in accordance with the principle *ubi eadem est ration eadem debit esse juris dispositio*.

On the other hand Scaevola says as follows:

"1. The vidual usufruct, is essentially a legal portion (*legítima*)—that is to say, a forced hereditary share—of which the testator cannot dispose because the law reserves it in favor of the surviving spouse who has not obtained a divorce or been separated on account of the fault of the predeceased spouse.

"2. The phrase, a legal portion (*legítima*), like that of forced heir, collective and reciprocal terms, refer essentially to testate succession.

"3. This legal portion is an exception to the principle of the free disposition of property and as such is of a restrictive nature, being solely applied to the cases expressly marked out by the law without being capable of being extended to other unenumerated cases. And if this is of such general application with respect to the legal portion of descendants and ascendants a stronger reason must exist with respect to the portion of the widower which has less potency than the portions of others seeing that the Code confines his rights to a limited space when it says that the widower is a forced heir in the manner and form, determined by sections 834 to 837. These sections form the realm of the vidual usufruct and it is there that it holds sway; outside thereof this right is without force and has no legal existence.

"4. Intestate succession, in the Spanish Civil Law, is complementary to or in substitution of the testate. In such succession the Legislature (and for that reason it is called legal portion) supplies the lack of the individual will of a person and fixes general rules for the case in which the expression of this will is lacking. It is therefore, we may say, a collective will made by law for all the cases in which there is no individual will (*testamento*) interpreting the will (*voluntad*) of those dying thus intestate.

"5. These general principles are brought to light in a provision of the Civil Code, section 913, according to which, in default of testamentary heirs, the law, according to rules to be expressed, devolves the inheritance to the legitimate and natural relatives of the deceased to the widow or widower and to the State.

"6. Among the legal rules by which the intestate succession is distinguished none recognize in the surviving spouse a vidual usufruct when there are legitimate or natural ascendants or descendants, these provisions being limited to conceding the same along with brothers or sons of brothers (sec. 953). As there does not exist then, any provision in favor of the vidual usufruct, except in the mentioned cases, its existence must be limited to them and not extend the same to cases not mentioned in the Code.

"7. Although it may be conceded outside of the legal domain, that the nonexistence of a usufruct in favor of the widower in all cases is due to omission or want of care, this idea is inadmissible in the legal sphere. The Legislature did not forget the vidual usufruct in treating of the intestate succession, because it provided for the same in one case (art. 953), and it must be presumed a conditional presumption that it foresaw the possibility of providing for the same in the other cases, and that for unknown reasons did not wish to establish this right except in the one case where it is actually expressed. It could have given life to this right in the other cases, nothing hindered, and in not having done so it must be presumed that the omission was made voluntarily and not by forgetfulness. Where the law wishes it speaks, when not it is silent; *ubi lex voluit dixit ubi noluit, tacuit.*

"8. More force is given to this view by the differing attitude of the law with respect to natural children in comparison with the same in connection with the widower. Aside from the fact that it devotes a subdivision to them, there exists section 943 especially devoted to determining the hereditary portion of the natural children along with legal descendants and ascendants.

"The mention of the provision shows its necessity. If it were unnecessary it would not have been included in the Code and if it were not set out there, no one would venture to maintain that natural children have a right to intestate succession when there were ascendants and decendants because the latter would exclude them completely.

"Therefore the same thing happens with respect to the vidual usufruct; for it to exist in intestate succession when there are legal as-

cendants and descendants or natural children there would have to be also a special provision." · (See Comentarios al Código Civil de Q. Scaevola, vol. 14, p. 615, *et seq.*)

The Supreme Court of Spain has never passed upon the question. The General Directorate of Registries found in favor of the right of the widower to usufruct but without giving any other substantial reason than that such was the legislative intention.

In 1902 the Legislature of Porto Rico passed the Civil Code and the Spanish Civil Code was thereby repealed. The provisions of the new Civil Code with respect to the rights of the widower were new and all of such rights clearly and precisely defined. Section 821, although placed in the part of the Code relating to testate succession, fixes the rights of the widower with respect to the intestate succession. ·This is made clear by a comparison of section 821 with sections 822 and 920. The Legislature of Porto Rico, however, by the Law of March 9, 1905, expressly repealed section 821 and reenacted the provisions of the Spanish Civil Code which relate to testate succession. That latest law makes no reference to intestate succession. Therefore, the question again arises of the rights of the widower, who is now placed in a worse position than he was before, because section 953 of the Spanish Civil Code which recognized the rights of the widower along with those of brothers or nephews, as the case may be, was repealed by the present Code and was not reenacted by the Law of March 6, 1905. We are, therefore, driven to the conclusion, whether it happened by an oversight or otherwise, that the Legislature in fixing the rights of the widower did not prefer him to or consider him along with parents, children, brothers, or nephews but limited itself to defining in section 920 that "in default of brother and nephews, the surviving spouse shall succeed to all the property of the descendant, whether or not the sisters and nephews be of the whole blood or the half blood."

It is a *casus omissus* in the law as it stands to-day. The Legislature had the power to determine who should be the forced heirs and who should succeed in case of intestacy. The words used are unmistakable and however inconsistent they may seem it is not for the court to substitute its will for that of the Legislature. It would be just as reasonable to take the intestate succession as expressing the real intention of the Legislature and determine the rights of forced heirs by the provisions with reference to such intestate succession. The *Siete Partidas* limited the portion of the widow to the amount it deemed necessary to her support. The Legislature of Porto Rico may have thought that the rights of the next of kin, from whom the property of a woman was likely to be derived, were to be preferred to those of a husband who is presumed to be self-supporting. In the case under consideration to hold otherwise would be to interfere with the plainly expressed rights of a parent.

The judgment must be reversed and the case must be sent back to the District Court of Humacao with instructions to grant the petition of Doña Dolores Julbe.

*Reversed.*

Justices MacLeary and del Toro concurred.
Chief Justice Hernández and Justice Figueras dissented.

DISSENTING OPINION OF MR. CHIEF JUSTICE HERNÁNDEZ AND MR. JUSTICE FIGUERAS.

In the month of December, 1908, Dolores Julbe, widow of López, appeared before the District Court for the Judicial District of Humacao and made a sworn application praying that she be declared the sole and universal heir of her daughter, Victoria López de Guzmán, alleging that Victoria had died in Humacao on October 30, 1906, having been married only once, to Julio D. Guzmán y Toro, by which marriage they

had a child named María del Carmen, who died December 10, 1904; that to the best of petitioner's knowledge and belief Victoria died without making any testamentary disposition whatever; that the petitioner, Dolores Julbe, as the mother of Victoria, was the only person entitled to succeed to her rights and actions; that the facts alleged can be proved by the testimony of witnesses and the documentary evidence attached to the petition, as stated, but which have not come up certified in the record.

On August 7 of the year following, 1909, Julio D. Guzmán filed in the said court a motion in intervention praying that in declaring the heirs of his deceased wife he be included in the declaration as an heir by force of law, entitled to the usufructuary share of the widower provided for by the Act of March 9, 1905.

The court below, after considering the claims of both parties and the evidence, consisting of the testimony of witnesses and documents presented, rendered its decision on August 27, whereby Dolores Julbe, the widow of López, and as the mother of the deceased, Victoria López, and Julio D. Guzmán, as the surviving widower of the deceased, were declared the sole intestate heirs of Victoria López Julbe in such shares as provided for under the law in force in 1906, which was the year in which their predecessor in interest died; and from this decision Dolores Julbe took an appeal to this Supreme Court.

Counsel for the appellant alleges as the only ground for the appeal that, according to the Act approved March 9, 1905, to modify and repeal certain sections of the Revised Civil Code in regard to inheritances, the widow or widower has no right of inheritance where the predecessor in interest dies intestate, no matter what his or her rights of succession might be under a will.

From an examination of the former Spanish Civil Code we find that section 5, chapter 2, title 3, book 3, articles 806 and 807 contain the following provisions:

"Art. 806.—A legal portion is that part of the property which the testator cannot dispose of because the law has reserved it for specified heirs, called, on that account, heirs by force of law.

"Art. 807.—Heirs by force of law are:

"1. Legitimate children and descendants, with regard to their legitimate parents and ascendants.

"2. In the absence of the foregoing, the legitimate parents and ascendants, with regard to their legitimate children and descendants.

"3. The widower or widow, the natural children legally acknowledged, and the father or the mother of the latter, in the manner and extent established in articles 834, 835, 836, 837, 840, 841, 842, and 846."

It is to be noted that these articles, 834, 835, 836, and 837, refer to the rights of the widower, while articles 840, 841, 842, and 846, refer to the rights of legitimate children.

The articles first cited read as follows:

"Art. 834.—The widower or widow who, on the death of his or her spouse, is not divorced, or should be so by the fault of the deceased spouse, shall have a right to a portion in usufruct equal to that corresponding by way of legal portion to each of the legitimate children or descendants who have not received any betterment.

"If one legitimate child or descendant only survives, the widower or widow shall have the usufruct of the third destined to the betterment, the former preserving the direct ownership until, on the death of the surviving spouse, the title is merged in him.

"If the spouses should be separated by a suit for divorce, the result of the suit shall be awaited.

"If there should have been a pardon or a reconciliation between the divorced spouses, the surviving one shall preserve his or her rights.

"Art. 835.—The hereditary portion, allotted in usufruct to the

widowed spouse, must be taken from the third of the property destined to the betterments of the children.

"Art. 836.—Should the testator not leave any descendants, but only ascendants, the surviving spouse shall have a right to the third of the estate in usufruct.

"This third shall be taken from the free half, the testator being allowed to dispose of the ownership of the same.

"Art. 837.—If the testator should leave neither legitimate ascendants nor descendants, the surviving spouse shall be entitled to one-half of the estate also in usufruct."

As will be seen, the rights of the widower in the testate succession are defined and enumerated in articles 807, 834, 835, 836, and 837, of the former code; and we say testate succession because the words "legitimate," "improvement," and "testator," employed in said articles, cannot be deemed to refer to an intestate succession, but to a testate succession.

Article 806 of the Spanish Civil Code was reproduced in our Revised Code as section 794, and article 807 was substituted by section 795, which we quote as follows:

"Section 795.—The following are heirs at law:

"1. Children and legitimate issue with respect to their fathers and lawful ancestors.

"2. Acknowledged illegitimate children with respect to their fathers and natural ancestors, and with respect to the lawful ancestors when there are no legitimate issue.

"3. In the absence of the former, fathers and lawful ancestors with respect to their children and legitimate issue.

"4. The parents of the acknowledged illegitimate child in respect to him and his natural issue and in respect to the lawful issue when there are no lawful ancestors.

"5. The surviving husband or wife in the form established by this Code."

That form appears established in sections 821 and 822

of the Revised Code, which substituted articles 834, 835, 836, and 837 of the old Code. These articles read as follows:

"Section 821.—The surviving husband or wife shall have the right if the decedent shall leave a legitimate child or an acknowledged illegitimate child or issue of these to one-half of the real and personal property of which the inheritance consists.

"If the deceased spouse shall have left more than one child living or represented by his issue, if any of them had died the surviving spouse shall have the right only to the third part of the real and personal property of which the inheritance consists.

"When there is no issue, but if there are ancestors, the surviving spouse shall have the right to the half of the real and personal property of the inheritance.

"When there is neither surviving issue nor ancestors, the surviving spouse shall have the right to two-thirds of the real and personal property of the inheritance.

"Section 822.—Where there is a will the surviving husband or wife shall have the right to one-half of the personal property in full and absolute ownership, and to a life estate in one-third of the real property."

The Revised Civil Code in these sections fixes the rights of the widower both as to testate and intestate successions, as is shown by a mere perusal thereof.

By the Act of March 9, 1905, sections 795, 796, 797, 801, 811, 812, 815, 821, 822, 823, and 824, of the Revised Civil Code were repealed and section 795 was substituted by section 1 of the said act, which reads as follows:

"Section 1.—Forced heirs are:

"1. Legitimate children and descendants, with regard to their legitimate parents and ascendants;

"2. In the absence of the foregoing, the legitimate parents and ascendants, with regard to their legitimate children and descendants;

"3. The widower or widow, the natural children legally acknowl-

edged, and the father or the mother of the latter in the manner and extent established in sections 8, 9, 10, 11, 14, 15, 16, and 20 hereof.''

Of those sections, the 8th, 9th, 10th, and 11th refer to the widower and were reproductions of articles 834 (eliminating the last paragraph thereof), 835, 836, and 837, respectively, of the old Spanish Civil Code.

Thus the provisions of the Spanish Civil Code respecting the rights of the widower in the testate succession were revived, and the changes made by the Revised Civil Code were repealed, which, as we have already said, made provision for the rights of the widower in case of either testate or intestate successions.

We have looked in vain in the Spanish Civil Code and in the Revised Civil Code, as modified by the Act of March 9, 1905, for any provision saving the rights of the widower or which expressly acknowledges them in case of intestate succession of the deceased spouse when there are ascendants or descendents, and in view of the law's silence in this regard we ask whether a widower should be deprived of all rights when he appears in the intestate succession with the descendants or ascendants, as maintained by the appellant in defending her rights of succession as against and to the absolute exclusion of Julio D. Guzmán, the surviving spouse of the deceased, Victoria Julbe.

We must answer that question in the negative because we cannot admit that the same law which provides that a testator shall not dispose of a certain part of his property to be reserved in usufruct to the surviving spouse, where there are ascendants or descendants, can deprive the surviving spouse, in case of intestacy, of all his rights when there are descendants or ascendants.

The character of forced heirs which article 807 of the Spanish Civil Code, section 795 of the Revised Code and sec-

tion 1 of the Act of March 9, 1905, give to the widower, fixing his participation in the estate of the deceased spouse under a will, is based on the representation which one spouse has with respect to the other in the family, in their life together, in the love which unites them, and in the participation which each spouse has during the marriage in the welfare or misfortune of the other.

"It may be conceived," says José Maria Manresa in his commentaries on the Spanish Civil Code, "that where freedom to dispose of one's property by will is granted, no privileges in respect to succession are established in favor of any one; but under the *legítima* system certain rights were by law recognized in a person who, like one of the spouses, filled such an important place in the family and was of such great significance to the person whose succession was involved. It was required by reason and justice. The wife, the husband and their children constitute the true family, the ties of affection and consideration uniting the spouses, the joys and sorrows shared between them do not permit the one who was everything in the home to be cast aside and perhaps left without protection in the absence of a life companion."

These considerations exist whether it is a testate or intestate succession, and, therefore, we think that in the absence of an express provision in the Civil Code establishing the rights of the widower in the intestate succession, when he appears with descendants and ascendants, he should be granted the same rights that he would have in the testate succession, and that application should be made of the rule of construction *rubi eadem est ratio eadem debit esse juris dispositio*.

Furthermore, according to section 855 of the Spanish Civil Code and 822 of the Revised Civil Code, in order that a surviving spouse may be disinherited, there must be some cause; and if it were admitted that in the intestate succession the

surviving spouse has not under the law any right to share in the inheritance left by the deceased spouse together with the descendants and ascendants, the former could be disinherited by the death of the latter intentionally and voluntarily without will, for the purpose of defeating the rights of the surviving spouse, who would by mockery be given the character of a forced heir which is conferred upon him by virtue of law.

It must also be borne in mind that, according to article 814 of the Spanish Civil Code, the equivalent of section 802 of the Revised Code, the preterition of the widow or widower, in case of an intestate succession, does not annul the constitution of heirs, but the one so eliminated from the inheritance preserves the rights granted by law; and as according to article 658 of the former Code (which is the equivalent of section 666 of the Revised Code), the succession is established by the desire of a man manifested in his will, and in the absence thereof, by the law itself, and as it may be established in part by the will of a man and in part by the provisions of the law, it is seen that in case of the preterition of the widower he is entitled to share in the inheritance by virtue of law, and this would not be voluntary, but an obligation imposed by the legislator and, to a certain degree, intestate.

If, in case of the preterition of the widower, there being a will, he preserves his rights granted by the law under the intestate succession, he must á fortiori preserve those same rights when the other spouse dies intestate—that is to say, without expressly stating his will, and, therefore, without the voluntary preterition of the surviving spouse.

In this connection the commentator above quoted, says:

"If the law does not expressly authorize the right of the spouse in the intestate succession when he comes in with legal descendants or ascendants or natural children, equity demands that it be granted

him, and the nature of the *legítima* system emphatically requires it. For the law to impose the *legítima* as an obligation upon the owner of the property when he makes his will and deny it when, because there is no will, it is the law itself which distributes the inheritance arbitrarily, is an inexplicable contradiction. The spouse does not lose his legal portion (*legítima*) in the testamentary succession, although he be disinherited or eliminated without any cause either certain or legal. If he is denied that right in the intestate succession, it ceases to be a legal portion (*legítima*), as defined by article 806 (sec. 794 of the Revised Civil Code), because it remains in the power of his predecessor in interest to say whether or not it exists; it is true that his express will to the contrary cannot prevail, but his tacit or implied will would prevail, because by not executing a will the other spouse would be disinherited.''

No doubt for the reasons set forth, it has been a practice generally observed to recognize the surviving spouse as entitled to the same share in the testamentary succession as in the *legítima* or intestate succession, when he comes in with descendants and ascendants to inherit from his consort, and this practice is recognized by the General Directorate of Registries of Spain in its decision of June 14, 1897, where it is invoked as authority for the admission to record of a partition of property wherein the usufructuary share of the widower was fixed at an amount equal to that corresponding to each of the children as the legitimate portion of the mother who died intestate.

The objection has been raised that the provisions of article 953 of the Spanish Civil Code in establishing that in case of the existence of brothers or sisters or their children, the widow or widower would have the right to share with them one-half of the inheritance in usufruct, as provided in article 837 of the said Code, without recognizing any right in the widower, in case of descendants or ascendants, clearly show that in such a case the rights of succession should be denied; but to this objection we reply, without admitting the force of

the contention, that the Revised Civil Code in fixing the rights of the widower in section 7, chapter 2, title 3, book 3, includes both testate and intestate successions, and section 4, chapter 4, of the same book and title, treats of the intestate succession of collaterals and spouses, in reproducing the same provisions as those contained in the Spanish Civil Code, repealed article 953, and it was inoperative until the Act of March 9, 1905, went into effect, which shows that the Legislature considered that the same rights should be granted the widower in the testate succession as in the intestate succession, not only when there are brothers and sisters of the deceased and their children, but also when there are descendants and ascendants thereof.

And, finally, we maintain that the rights granted the widower in the testate succession by the Act of March 9, 1905, although not set forth expressly in the Revised Civil Code in treating of the intestate succession, must be considered as virtually admitted, because natural justice as well as the general principle of law and accepted usage and custom so require; and in reaching this conclusion we follow the provisions of section 7 of the Civil Code which reads:

"When there is no statute applicable to the case at issue, the court shall decide in accordance with equity, which means that natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages and customs, shall be taken into consideration."

In view of the foregoing reasons, the judgment rendered by the District Court of Humacao, on August 27 of last year, should be affirmed.